The last case of the day is Piao v. Jennings-Smith Investigations. Hang on, Ms. Paz. Hang on for a minute. Your audience has shrunk considerably. That's all right. The billing rate in the room is going down appreciably. I'm actually appreciative of that. It's all right, Ms. Paz. Ms. Paz. Ms. Paz. Morning. Morning, Your Honors. It's a pleasure to be here. Brittany Paz, the attorney for the petitioner, plaintiff appellant, Ms. Piao. This case, Your Honors, is about the seemingly paradoxical decision of the district court in which the district court made a finding that the five, or I believe it's five, reasons to support a CUPTA violation were no reasonable juror could find that there was a CUPTA violation for those five proffered reasons. But then, however, there was sufficient information for all five of those reasons to go to a jury on a breach of covenant of fair dealing claim. And when the district court wrote its decision to come to the decision that it ultimately did come to, it made a number of factual material findings that were not interpreted in light most favorable to the plaintiff, and also made a number of credibility determinations that were best left for the jury to determine. And I'll go through a number of those with you here, but I think the most important of which are the arguments about the billing practices. If I can just direct you to the decision at Special Appendix 26, which is that the district court found that the bills, the error on the bills, were, quote, mistakes. Now this was what the defendant testified, that hey, you know, I had these number of mistakes and I admitted to them, never offered to correct them. However, there was, on the plaintiff's side, a number of evidence submitted to the jury to suggest that they weren't just simple mistakes. And I'll cite the court to the testimony that the defendant had billed the plaintiff to have dinner with them. Also the testimony, there was some double billing, and then there was also some testimony about, on approximately 20% of the, I'm sorry, 20 occasions, but 17% of the bill, that there were errors in the bill, and not just errors, but up-rounding billable time, and also billing on occasions where the plaintiff was at work and the defendant indeed knew she was at work and unable to answer the phone. So in fact, billing her for .2 hours to leave her a voicemail, knowing that she couldn't pick up the phone. Then finally, the court also did not address the fact that after the business relationship between the plaintiff and the defendant had ended, and despite the fact that all billing should cease and work should cease when the retainer has been depleted, sent her a bill for almost double what she had already paid, $10,535, when she refused to pay it, then attached her house in a prejudgment remedy. So the court didn't even address those issues, except to find that these mistakes were in fact mistakes, and these mistakes were so infrequent that no reasonable jury could find this. However, then turns around and says, okay, well I am going to submit this allegation to the jury on a breach of covenant affair dealing claim. So even though the district court is saying, hey, I don't think there is sufficient evidence for the billing practice issue to go on a CUPTA claim, there is on a breach of covenant affair dealing claim. The district court judge found other reasons to dismiss the CUPTA claim, right? He found that no reasonable juror could conclude that the website fraudulently induced you to believe that it was a large company equal to the size of American FedEx. Yes, sir, I did read that. There were five reasons submitted by the plaintiff. If we were to accept that the rulings with regard to the failure to establish some of the elements of the CUPTA claim outside of the causal relationship, because your client did recover, as you say, on the damages side, so the jury did find some relationship between the conduct of the defendant and a breach of a covenant of good faith and fair dealing. They understood some causal link, and there's an overlap in the alleged conduct, the misbilling, et cetera, between the two claims. How do you address . . . what error was there with regard to the finding as to the substantive elements of the claims? Set the damages aside and the substantive elements of the claims that the court found were wanting with regard to plaintiff's proof? As I said, there were five reasons why the plaintiff argued that there were a CUPTA violation, and you did mention a couple of them. In our brief, I did try to address each of those individually, but part of the main reason why the decision is kind of not really understanding it is because a lot of the decisions are based on facts as found by the district court that are not construed to Ms. Powell's . . . for example . . . Your client argued that the investigator engaged in unfair conduct and deceptive conduct by communicating with the New Haven police by getting the accident report when that's exactly the thing she asked him to do. That seems strange to me. Okay, so what she was mainly complaining about is, first, the billing practice, second, the misrepresentations in the website, which we briefed about the management team and how that worked. She did also argue . . . one of the third arguments was a breach of confidentiality, and then she also argued that . . . I have a list of the arguments. Unfair and deceptive practice. Billing practice. Right. So there were five total that she submitted to the jury. I mean, obviously some are stronger than others. You know, as far as the breach of the confidentiality, that's one of the weaker ones. I think the strongest ones are the billing practices and the website issue. But if I can just go back to the factual determinations that were made by the court, and the reason why I take issue with these is because . . . for example, the district court found that the defendant told the plaintiff of the work product rule, and in that she cites the defendant's final report, which was issued a year after Ms. Powell had already terminated the defendant. And in that report, it said, okay, well, we let you know that we can't write a report because of this work product rule. But then also, the plaintiff, Ms. Powell, had attempted to withhold information from the defendant by not disclosing the existence of a previous report that had found that there was no issue with the tire. Okay. Let's hear from your opponent. Sure. Mr. Krish. Good morning, Your Honors. Daniel Krish for the appellee. I want to start with your question, Judge Wesley, about what was and wasn't submitted to the jury. There was not complete overlap between the bad faith allegations and the CUTPA allegations. And that's important because the jury was not given specific interrogatories as to which of the six bad faith allegations they were finding in favor of the plaintiff on. There's just one general question. And it may very well have been that the jury found for the plaintiffs on one of the allegations that didn't match up with the CUTPA claims. In particular, the failure to refund the plaintiff's retainer, which was not a basis for their CUTPA claim, but was a basis for their bad faith claim. And if you look at Joint Appendix 11. The damages they gave weren't the retainer. They gave her the damages which were equal to all the billings after the retainer, right? That's correct because the allegation included two parts. The second of which is you were supposed to stop work when my retainer was exhausted and only continue and continue to bill me if I authorized it. And so by awarding the, as you point out, the exact amount of the overage above the retainer, it's possible that the jury found on bad faith for that reason, which is not a CUTPA claim. But the important point is that we don't know. And the general verdict rule says that you don't speculate about which possible legal theory a jury found for a plaintiff on, if they're the appellant, when there's not a specific interrogatory to tell you. And Connecticut law is that only if it's the same conduct, breach of contract, bad faith, same conduct as CUTPA, does that overlap matter. The damages award was $8,500. $8,500. $8,250. Right. Okay. So that was the amount of money that would have been accrued after? To the dollar. To the dollar. The amount accrued after the $5,300 retainer was exhausted. I want to talk about the billing issue. Even viewed in a light most favorable to the plaintiff, as this court must, as a matter of law, there's no basis for a CUTPA violation simply based on overbilling. Even if you find the overbilling was intentional, and this court said in the Boulevard Associates case, as a matter of law, profit motive is not an aggravating circumstance that turns a breach of contract case into a CUTPA case, because profit motive is often the reason that somebody breaches a contract. And in the Gaynor case, the Connecticut Appellate Court, again, as a matter of law, in Gaynor a home improvement contractor overcharged the plaintiffs for constructing their driveway, charged them for work he hadn't completed. Connecticut Appellate Court, as a matter of law, said that didn't change it from being a breach of contract case into a CUTPA case. And so the billing issues at most reflect profit motive. But as a matter of law, profit motive doesn't make a CUTPA claim. And the obvious reason for that is that the Connecticut courts and the federal district courts, when CUTPA claims come before them, are very careful to keep CUTPA within narrow bounds. CUTPA has attorney's fees, has punitive damages, it's a very attractive  opportunity for the Connecticut legislature to have an extraordinary alteration of the common law by turning every contract dispute into a CUTPA violation. Judge Russell, you mentioned the website allegations. This court and the district court and the Connecticut courts have said you have to apply a reasonable consumer standard, not every possible misconception that an unreasonable consumer would make based on what a website says or what is represented to them as part of a sales pitch. My favorite case discussed in the brief, now I'm a Mets fan, but it's still my favorite case, is the Weinstein case where somebody claimed that StubHub was the same thing as the Yankees. And the district court, the southern district said that's no reasonable person would think that. Looking at the website, no reasonable person would think that the seven people listed under management, four of seven of whom were described as consultants, were employees of JSI. You have to read the website as a whole. The descriptions of what they do, what their work is, makes it clear that they're not employees, even if that were somehow causative of an ascertainable loss, which Judge Fitzsimmons also found was not the case. And the other allegations about the website are the same. In the end, the plaintiff got exactly what she bargained for. She got a professional investigation into the claim that her daughter's tire had been slashed. And there's no doubt that she's unhappy, angry about the outcome of that investigation, about what the New Haven Police Department concluded, about what my clients concluded. But the Connecticut Appellate Court said, and did Therese, you don't get to CUTPA just because you're angry or your feelings are hurt or you've suffered some sort of emotional injury. This is a very emotional thing for the plaintiff. It involves her daughter. That's natural and not a violation. That's not an ascertainable loss. Unless Your Honors have other questions, I'd ask the judgment of the District Court be affirmed. Ms. Pass. Thank you, Your Honors. Just to address a few of the points that my opponent had made. So as far as the notes that the jury sent out, or not sent out, and then the verdict form. In a general verdict, where there's a number of theories of liability, there is, it is clear, the law is clear that if we are reasonably sure that the jury, in fact, relied on a theory with adequate evidentiary support, then it doesn't matter that the verdict form is a general form. And I want to go back to the questions about the award that was actually ordered. So the jury obviously found that there were some issues with the last retainer. And the reason for that is because the contract specifically stated that this defendant had no right to continue billing. So that was an unfair practice, and so she was awarded everything that she had paid after. Also, I want to be clear that the focus on this being a contract case is probably not the best focus. This is a bad faith breach of covenant case. So we can certainly have a case where we do here, where there is no breach of contract, but there is a bad faith action by the defendant. And there is a breach of the covenant of fair dealing. And that, in and of itself, makes a CUPTA violation. It's not the breach of the contract that makes the CUPTA violation, which is why... Are you suggesting that breaches of good faith and fair dealing are coterminous with CUPTA claims? I think that the breach of the covenant of fair dealing falls directly under the cigarette, the first rule of the cigarette test, which if I may... I'm familiar with it. It requires some common law or statute or penumbra of some common law that is an established concept of unfairness, and that is what the breach of covenant of fair dealing is. And then, if I have three seconds just with the website, I understand what the defendant is saying about FedEx. So it is not reasonable for someone to think that this is a big company akin to FedEx, but I think what it is reasonable to assume is that this was not a one-man shop in his house with a P.O. box. So I think that's what the main crux of the argument about... It's a pretty good one-man or one-woman shops with a P.O. box. Well, what her point was was that she thought because there were so many people listed on the site that it was more than just a one-man show. And I think that that's what she wanted, and she didn't bargain for it. Is there really a viable difference between an employee or, theoretically, an independent contractor who's got a basic contractual relationship with, in this particular case, the defendant? Well, the three people, just to answer your question, the three people that were listed as independent contractors were clearly listed as independent contractors. So a layperson, I mean, obviously Ms. Piao isn't from here, so she doesn't have a lot of experience with our legal system and our business system in general, but the other people weren't listed as anything except management. So I would think it would be a reasonable person to believe that these people were employed with the firm, but these people weren't employed with the firm, and in fact, at the trial, it came out that these people needed a separate contract to enter into with them in order to gain their services. So just by mere fact of her being in a contract with the defendant did not give her access to these people's services. Thank you very much. The matter is deemed submitted. You'll hear from us in due course. I'll ask the clerk to adjourn the court. Thank you very much.